UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


TIMOTHY M. TOWERS and
KRISTY HUZZARD-TOWERS,            :
                                  :
            Plaintiffs            :
                                  :      NO. 3:CV-06-700
         -vs-                     :
                                  :      (Judge Kosik)
                                  :
HEIDELBERGER DRUCKMASCHINEN       :
AKTIENGESELLSCHAFT a/k/a/d/b/a:
HEIDELBERGER DRUCKMASCHINEN       :
AG, and                          :
                                  :
HEIDELBERG USA, INC., et al.,     :
                                  :
            Defendants            :


### MEMORANDUM AND ORDER

This matter is before us on the motion of defendant Heidelberger Druckmaschinen AG (HDM) to dismiss this product liability action against it for lack of personal jurisdiction. The motion, filed on October 4, 2006, is supported by numerous attachments as an appendix to its brief, including a declaration of a Wirnt Galster, a corporate officer of HDM who negates any corporate activity of HDM in the form of jurisdictional contact with Pennsylvania, and specifically contradicts the deposition of Matthias Chone, previously designated by HDM as "Corporate Designee" to be deposed by plaintiffs.

Prior to filing the motion to dismiss, HDM served counsel for the plaintiffs with some sixty corrections to the deposition transcript of Chone which, in one particular instance, substantively changed Chone's response to a question dealing with

HDM's shipping "printing presses" into Pennsylvania from a "yes" to "no."  Essentially, HDM claims its corrections were needed because of obvious reporter errors as a result of misunderstanding the witness because he was not testifying in his native language. Additionally, HDM claims Chone's testimony is contrary to other discovery.  The corrections prompted a motion by plaintiffs to strike the corrections to the transcript of Chone's deposition and to stay briefing on the jurisdictional motion.[1]  In the response to this flurry of activity, the court afforded time for the parties to engage in further discovery.  The matters are now ripe for disposition.

## Background

On August 24, 2004, plaintiff Timothy Towers suffered an injury at his employment with the Montrose Printing Company in Montrose, Pennsylvania.  His injury occurred while working with a printing press.  The press allegedly was designed and manufactured by HDM in Germany.  It was sold by HDM in 1979 to a customer in Germany.  In December 1998, the press was sold and shipped to Montrose Printing Company by the Mid-Michigan defendants which have no relation to HDM.  Heidelberg USA Inc. (HUS) was also named as a defendant.  HUS was not involved in the sale of the press, but it has been the exclusive U.S. distributor of HDM-manufactured

---

[1]We raised an issue with counsel as to whether HDM complied with the requirements of Fed.R.Civ.P. 30(e) necessitating a request to review a deposition before its completion as a prerequisite to making corrections.  Although we found no evidence of compliance, plaintiff's counsel responded saying counsel would stipulate that HDM met the requirements.

products since 1993.  Other named defendants are Heidelberg Americas, Inc. (HAI), a holding company that is wholly owned by HDM.  HUS is a wholly-owned subsidiary of HAI with a principal place of business in Georgia.  It is undisputed that HUS does business in and is subject to personal jurisdiction in the Commonwealth of Pennsylvania.

In its Answer, HDM asserted as an affirmative defense that it was not subject to personal jurisdiction by reason of insufficient contacts with the Commonwealth of Pennsylvania.  Prior to HDM's motion to dismiss on the same grounds, the parties engaged in significant discovery on this issue.  At the request of plaintiffs to produce a corporate designee concerning HDM's business and contacts with Pennsylvania, HDM produced Matthias Chone who was noticed by plaintiffs to be deposed.  The notice was elaborate in providing forty-three paragraphs of matters to be inquired into, as well as the production of documents.  The deposition of Chone consists of 152 pages.  Chone was represented by defense counsel who is active in this litigation and who was familiar with the jurisdictional issue from the outset. The deposition preliminaries included advising the witness of the purpose of a sworn deposition, his right to inquire if something was not understood and, the right to take a break and to confer privately with counsel. Although the witness was a German national, there was initially no hint of or reference to his inability to understand English or to respond in English.  At times during the deposition, counsel made objections and participated in clarifications and could do so when a recess

was taken.  The deposition was taken by a registered professional reporter provided by Veritext Pa. Court Reporting Company. Similarly, HUS produced Jeff Frick, a corporate designee who was deposed concerning the distributor relationship between HDM and HUS.

As noted earlier, HDM's motion to dismiss is supported by a declaration of Wirnt Galster, the corporate governance officer of defendant HDM, which *inter alia*, completely contradicts HDM corporate designee Chone about HDM contacts with Pennsylvania.  We shall have occasion to allude to other evidence in the following discussion.

## **Discussion**

### **I.**

We first address plaintiffs' motion to strike the proposed corrections to the deposition of HDM's corporate designee Matthias Chone.

Fed.R.Civ.P. 30 provides the basic rules for the procedures used in taking depositions.  Specifically, Rule 30(e) outlines the procedure for correcting changes in the form and substance of a deposition.  The rule does not limit the type of changes which may be made.   Regardless, plaintiffs believe we should adopt the reasoning of some courts that the rule only permits the correction of typographical and transcriptional errors.  It appears to be conceded that our Circuit Court has not considered the issue.

Plaintiffs believe that the effort of HDM is to change the deposition testimony of Chone on a material matter; material in the

sense that the defense motion to dismiss, while intended to be filed from the outset, relies on the declaration of another corporate officer in the person of Wirnt Galster to completely contradict Chone on an issue very material to the motion to dismiss.  For reasons discussed earlier, we see nothing in the record to suggest any impediments to Chone understanding questions or in communicating his answers.  There may be contradictions in his answers in some respect, but it certainly is not evidence of error in reporting or understanding when it all occurs in the presence of defense counsel who is of the mind to challenge jurisdiction all along.

We will follow the holding in *Podel v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997).  The corrections are allowed without entitling the deponent to have his altered answers to take the place of his original ones.  The original answers will remain part of the record to be considered as out-of-court statements and admissions to be considered with the amended answers and explanations all in the context of other relevant evidence.

**II**.

Both sides to this controversy over jurisdiction have extensively briefed the issues.  There appears to be a general agreement that whether a federal court has personal jurisdiction over an out-of-state defendant depends on the forum state's law and on due process considerations.  Although long-arm statutes differ, many states, including Pennsylvania, authorize jurisdiction to the fullest extent allowable by constitutional due process.  *See*, 42

Pa.C.S.A. §5322(b).  Accordingly, the defense considers the only real issue before this court is whether the exercise of personal jurisdiction over HDM would comport with due process.  Defendant says that the due process limit to the exercise of personal jurisdiction is defined by a two-part test.  First, plaintiffs, to satisfy their burden, must show that the non-resident defendant has certain constitutionally sufficient "minimum contacts" with Pennsylvania, and second, the personal jurisdiction over the non-resident defendant must not offend "traditional notions of fair play and substantial justice."  *Vetrotex Certainteed Corp. v. Consolidated Fiberglass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

Once jurisdiction is challenged, the burden on plaintiffs is to establish with competent evidence that the court may exercise jurisdiction; meaning actual proofs, not mere allegations.  *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.), *cert. denied* (1990).  The district court may exercise authority over a defendant by virtue of either general or specific personal jurisdiction.  If general jurisdiction exists, the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over a defendant to be proper.  However, general jurisdiction exists only when the defendant's ctivities in the state are "continuous and systematic."  *Simeone v. Bombardier-Rotax*, 360 F.Supp.2d 665, 673 (E.D.Pa. 2005), citing *Imo Industries, Inc. v. Kiekert*, 155 F.3d 254, 259 n.2 (3d Cir. 1998).  Specific jurisdiction on the other hand only exists where a

-6-

defendant purposefully directs his activities at a forum and injuries arise out of or are related to those activities, _Id._ at 670, alluding to the need for the particular product involved to be marketed in the forum state.

Defendant HDM argues that there is no corporate activity which connects it to Pennsylvania through physical presence or direct shipments to Pennsylvania except through its distributor HUS. HDM relies strongly on the declaration of Wirnt Galster that HDM's activities are all directed through HUS. In this case, HDM argues that it not only did not sell the product to Montrose Printing, but could not foresee it ultimately ending up with Montrose. HDM claims plaintiffs rely on pure speculation.

Plaintiffs rely on the deposition of HDM's corporate designee Chone, the affidavit of the owner of Montrose Printing, and an expert's calculations,[2] and some physical evidence to contradict the defense and to sustain their burden of proof. According to Chone, HUS is the exclusive distributor of new HDM presses in the United States. HUS serves as HDM's sales and service unit. HDM knows HUS sells products in Pennsylvania, and is the only entity which can generate income and profit for HDM in the United States. According to the deposition of Frick, a HUS designee, they have an integrated sales system. Chone stated that HDM ships specifically configured presses from HDM in Germany to Pennsylvania customers

---

[2]Much of the expert's calculations are designed to show the value of HDM presses in Pennsylvania, but principally through HUS, its subsidiary. We do not decide this matter by piercing a corporate veil between HDM and HUS.

knowing they are destined for Pennsylvania customers.[3]  At times, HDM directly ships parts to Pennsylvania even though HUS may request those shipments.  The distributor agreement allows for HDM to ship directly to a customer in Pennsylvania, but it would require HDM to pay a commission to HUS.  HUS is required to display the HDM logo along with its own.

   HUS printouts of parts sold to Montrose Printing from 1998 through 2006 show 47 different sales prior to the accident in this case.  In response to discovery requests, HDM said it had no records of direct shipments.  An affidavit from Mr. Spence from Montrose Printing states that he has communicated with both HDM and HUS in ordering parts which were shipped from Germany before and after plaintiff Towers injury.  Spence produced Federal Express labels for parts HDM shipped directly from Germany to Montrose at its Montrose address and intended for the subject press.  Spence states that when ordering from HDM, he provides serial numbers for its presses HDM knows to be in Montrose.

   On one occasion, HDM provided a service technician to assist HUS in repairing a HDM press in Pennsylvania.  Although at the instance of HUS, HDM has assisted a Pennsylvania customer in obtaining financing in Germany for equipment purchased from HUS for which HDM took an assignment.  In a response to interrogatories,

---

   [3]Discovery established that HUS had 545 customers in Pennsylvania, many owning multiple HDM-made presses with a total of 1792 HDM-made presses located in the state.  The costs per press run anywhere from hundreds of thousands of dollars to millions.  The presses need parts which had to be provided in a manner similar to that used in supplying Montrose.

HDM acknowledges that it appeared as a defendant in two Pennsylvania cases in the past ten years, both in state and federal court, without raising a question of jurisdiction. The defense claims, upon information and belief, it was because counsel did not raise the jurisdictional issue.

We have no doubt that if we were to rely upon the evidence being offered by the defense alone, plaintiffs could not credibly sustain their burden of proof. However, where factual discrepancies created by affidavits [or depositions] exist, they are generally resolved in favor of the non-moving party as in the case of summary judgment motions. *See*, *McMullen v. European Adoption Consultants, Inc.*, 129 F.Supp.2d 805, 810 (E.D.Pa. 2001) (involving a motion to dismiss on jurisdictional grounds). The existence or absence of personal jurisdiction depends upon an assessment of the quality and nature of a defendant's activity, a fact-sensitive issue. *Pennzoil Products, Co. v. Colelli & Assoc.*, 149 F.3d 197, 203 (3d Cir. 1998). We find the evidence supports plaintiffs' position that defendant had sufficient and continuous contacts with Pennsylvania.

While HDM and HUS are clearly separate legal entities, their legal status notwithstanding, their relationship is a loose one, and in their effort to avoid responsibility for HDM's products, it has its weaknesses, leading to HDM's targeting its dealing at Pennsylvania residents to the extent that we believe there to be both general and specific jurisdiction over HDM because it would not violate due process or traditional notions of fair play and

substantial justice for HDM to answer for its product in Pennsylvania.  In fact, this may all result with the increasing specialization of commercial activity and the growing interdependence of business enterprises, so that it is seldom that a manufacturer deals directly with customers in other states. The manufacturer's benefit may be indirect, but it does not make it any less essential to the conduct of the manufacturer's business.

SO ORDERED.


                                   *s/Edwin M. Kosik*
                                   United States District Judge


Dated: April 26, 2007